IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INNOVATIVE POLYMER TECHNOLOGIES, LLC and DONALD B. JONES, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 17-1385<br>Chief Magistrate Judge Maureen P. Kelly |
| v. | ) ) ) | Re: ECF Nos. 23 and 26 |
| INNOVATION WORKS, INC., PENNSYLVANIA, DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, DENNIS M. DAVIN, and SHERRI COLLINS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiffs Innovative Polymer Technologies, LLC ("IPT"), a minority owned limited

liability corporation, and Donald B. Jones, the President and CEO of IPT, ("Plaintiffs") have

initiated this action against Defendants Innovative Works, Inc. ("IW"), a non-profit corporation;

Pennsylvania Department of Community and Economic Development ("DCED"); Dennis Davin,

the Secretary of the DCED; and Sherri Collins, the Deputy Secretary of Technology and

Innovation for the DCED, (collectively, "Defendants"). Plaintiffs allege that because of Mr.

Jones' race, Defendants failed to provide economic support and professional assistance to IPT,

and have thereby violated the Equal Protection Clause of the United States Constitution (Count

I); the right to contract pursuant to 42 U.S.C. § 1981 (Count II); Title VI of the Civil Rights Act

of 1964, 42 U.S.C. § 2000d (Count III); and the Pennsylvania Constitution (Counts IV and V). ECF No. 1 at 16-18.

Presently before the Court are Motions to Dismiss filed on behalf of Defendants DCED, Davin and Collins (the "Commonwealth Defendants"), ECF No. 23, and on behalf of IW, ECF No. 26. The motions have been fully briefed by the parties, and are ripe for disposition. See, ECF Nos. 24, 26, 31, and 32. For the following reasons, the Motions to Dismiss are granted.[1]

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that Defendant DCED is a state agency that administers the distribution of funds in furtherance of the Ben Franklin Technology Partnership ("BFTP"). BFTP is a statutory Commonwealth of Pennsylvania initiative promulgated to promote and support in-state business innovation. BFTP's mission is carried out through four regional non-profit organizations including Defendant IW, the designated Southwestern Pennsylvania regional partner. As a BFTP partner, IW is "responsible for using and distributing capital provided by the Commonwealth to assist and invest in individual companies selected by a partner's regional board." ECF No. 1 ¶ 30. Pursuant to its mission statement, IW "invests capital, business expertise and other resources into high-potential companies with the greatest likelihood for regional economic impact in the Pittsburgh region." Id. ¶ 37.

Plaintiff Donald B. Jones ("Mr. Jones"), "a Black resident of Allegheny County, Pennsylvania," serves as CEO and President of Plaintiff IPT. IPT was created in 2003 when PPG Industries, Inc. ("PPG") discontinued funding of solid state sheer-pulverization ("S$^3$P") research at Northwestern University, a project that Mr. Jones participated in as a PPG-sponsored

---

[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. See 28 U.S.C. § 636 et seq. (ECF Nos. 9, 17 and 18).

research engineer.[2]  Id. 1 ¶¶ 15-17, 21.  Mr. Jones decided to pursue commercialization of the

$S^3P$ "unique plastic and rubber processing technology."  Id. ¶¶ 15-21.  In furtherance of his

goals, Mr. Jones founded IPT, purchased one of two existing prototype $S^3P$ commercial

production machines, and located the equipment in Youngstown, Ohio.  Rupert West, also a

Black resident of Allegheny County, serves as IPT's business development consultant.  Id. ¶¶

22-24

Plaintiffs allege that Mr. Jones approached IW in 2004, seeking assistance for IPT in the

form of grants and financing, advice, and business expertise. Id. ¶ 41.  According to Plaintiffs,

IW's assistance was crucial given national statistics regarding capital barriers facing minority-

owned companies.  Despite providing all information and documentation requested by various

IW staff members, Mr. Jones' requests for funding were denied in 2005, 2007, and 2009.

Plaintiffs allege that throughout this period, IW staff members added undefined and undescribed

requirements and directions that served "no legitimate purpose," but were designed to "delay,

frustrate and/or sabotage" IPT's efforts to secure IW assistance.  Id. ¶¶ 43, 52-54. Plaintiffs

allege that IW's conduct contrasts with the support and enthusiasm expressed toward Plaintiffs

and the $S^3P$ technology by academic professionals on staff at three area institutions of higher

education.  Id. ¶¶ 49, 55-57, 59-64. Plaintiffs concede, however, that at least one academic

---

[2]  A routine review of this Court's docket revealed that Mr. Jones previously brought suit against PPG alleging, *inter alia*, that its decision not to pursue commercialization of $S^3P$ technology was the result of race-based discrimination. Jones v. PPG Industries, Inc., No. 07-1537, ECF No. 20-1 at 10-12 (W.D. Pa.).  The Arbitrator's award in favor of PPG Industries was confirmed by Order entered April 27, 2009, and affirmed on appeal to the United States Court of Appeals for the Third Circuit by Order entered September 15, 2010.  Id. ECF Nos. 26, 27, 30, 31.

A court may take judicial notice of dockets or other court opinions at the motion to dismiss stage. In re Congoleum Corp., 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."). However, at the motion to dismiss stage, a court may take judicial notice of another court's opinion only for the existence of the opinion, not for the truth of the facts asserted within the opinion. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  Accordingly, the 2007 Arbitration opinion and docket are noted at this stage solely for purposes of acknowledging Mr. Jones' claim arising out of another entity's refusal to commercialize $S^3P$ technology based upon alleged racial animus.

professional "withdrew his support" after discussing the funding request with IW officials. Plaintiffs also allege that in 2007, IW provided funding to a White-owned media venture consisting of a radio show.  Id. ¶ 58-61.

In 2014, Mr. Jones learned that a different regional BFTP partner provided substantial funding to a "White owned business" "to start an operation similar to that which IPT had been promoting." Id. ¶ 65.  Upon learning of the grant, Mr. Jones requested a meeting with IW to find out why IPT received no support, but a separate regional agency funded what Mr. Jones believed to be a similar venture.  Subsequently, IW assigned a new staff member to work with IPT, who "identified several issues that needed to be addressed by IPT." Id. ¶ 70. Plaintiffs complain that after responding "fully and promptly," the IW representative raised new issues, requested additional information, and "ignored" IPT's responses.  Id. ¶ 72.

Based on IPT's failure to obtain assistance from IW, Mr. Jones "concluded that his race and/or color was the reason IPT had received no funding from IW."  Id. ¶ 73.

In February 2015, Plaintiffs sought the assistance of Defendant Collins, in her capacity as Deputy Secretary of Technology and Innovation at DCED, to overcome "IW recalcitrance." Id. ¶ 74.  In the course of a May 2015 teleconference with Collins and DCED counsel, Mr. Jones learned for the first time of IW's formal application process. Collins appointed a DCED staff member "to assist IPT with its IW problems." Id. ¶ 79.  Such assistance, according to Plaintiffs, "was an empty gesture." Plaintiffs state that the staff member was critical of IPT's desire to obtain IW funding and guidance, even after Plaintiffs assured the staff member that IPT's operations (then located in Youngstown, Ohio) would be based in Pennsylvania.  Id. ¶ 80. Plaintiffs conclude that Collins and Davin acted in coordination with IW "for reasons of race,"

and were unwilling to exercise appropriate oversight and supervision to ensure that IW did not discriminate on the basis of race when granting funding and assistance. Id. ¶¶ 89-91.

Plaintiffs subsequently submitted an application for funding to IW, but have not received the requested financial assistance. Plaintiffs state that IW denied them funding because of race-based discrimination. Id. ¶ 87.

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss – 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedures, the Commonwealth Defendants challenge the jurisdiction of this Court over claims asserted against DCED and the individual Commonwealth Defendants in their official capacities, and raise the Eleventh Amendment's limitation of judicial power over actions within the scope of a state's sovereign immunity. ECF No. 24 at 4.

"[A] Rule 12(b)(1) motion is directed to the court's 'very power to hear the case.'" Judkins v. HT Window Fashions Corp., 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting Mortensen v. First Federal Savings & Loan Association, 549 F.2d 884, 891 (3d Cir. 1977). As the parties asserting that jurisdiction exists, Plaintiffs bear the burden of showing that their claims are properly before the court. Development Finance Corp. v. Alpha Housing & Health Care Inc., 54 F.3d 156, 158 (3d Cir. 1995).

> In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. A facial attack challenges the sufficiency of the plaintiff's pleadings on jurisdictional grounds. Petruska v. Gannon University, 462 F.3d 294, 302, n. 3 (3d Cir. 2006). When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. Id. A factual attack on the court's jurisdiction must be treated differently. Id. When considering a factual attack, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself

whether jurisdiction over the plaintiff's claims can be properly exercised.
<u>Mortensen</u>, 549 F.2d at 891.

<u>U.S. E.E.O.C. v. Court of Common Pleas of Allegheny Cty., Fifth Judicial Dist. of Pennsylvania</u>,
62 F. Supp.3d 428, 432 (W.D. Pa. 2014).

### B. Motion to Dismiss – 12(b)(6)

IW and the Commonwealth Defendants also seek dismissal pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure, contending that Plaintiffs have failed to allege facts
sufficient to state a claim upon which relief may be granted. A motion to dismiss filed pursuant
to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the
plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. <u>Erickson
v. Pardus</u>, 551 U.S. 89, 93-94 (2007). However, a complaint must be dismissed pursuant to Rule
12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."
<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, 678 (2009) (specifically applying <u>Twombly</u> analysis beyond the context of the Sherman
Act).

The Court need not accept inferences drawn by a plaintiff if they are unsupported by the
facts as set forth in the complaint. <u>See</u> <u>California Public Employees' Retirement. Sys. v. Chubb
Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (<u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d
902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual
allegations. <u>Twombly</u>, 550 U.S. at 555 (<u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).
<u>See also</u> <u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 531 (3d Cir. 2009) ("the tenet
that a court must accept as true all of the allegations contained in a complaint is inapplicable to
legal conclusions"). A plaintiff's factual allegations "must be enough to raise a right to relief

above the speculative level." Twombly, 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal

Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although this standard does "not

require heightened fact pleading of specifics, [the Court does require] enough facts to state a

claim to relief that is plausible on its face." Id. at 570.

In other words, at the Motion to Dismiss stage, a plaintiff is "required to make a

'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008

WL 482469, at *1 (D. Del. Feb. 19, 2008) (quoting Phillips v. County of Allegheny, 515 F.3d

224, 234 (3d Cir. 2008)). "This 'does not impose a probability requirement at the pleading

stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery

will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly,

550 U.S. at 556.

The Third Circuit has explained the review undertaken pursuant to the Twombly/Iqbal

line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we
> must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to
> state a claim.' Second, the court should identify allegations that, 'because
> they are no more than conclusions, are not entitled to the assumption of
> truth.' Finally, 'where there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly
> give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v.

Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)).

III.    DISCUSSION

    A.    Eleventh Amendment bar to claims asserted against Commonwealth
          Defendants

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Commonwealth

Defendants seek dismissal of Plaintiffs' federal law claims against DCED, as well as official

capacity claims against Defendants Davin and Collins, and invoke the Eleventh Amendment as a bar to this Court's jurisdiction. ECF No. 24 at 6-7.

It is well established that the Eleventh Amendment generally bars a civil rights suit in federal court that names the state as a defendant. Laskaris v. Thornburgh, 661 F.2d 23, 25–26 (3d Cir. 1981). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it ... a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Alabama v. Pugh, 438 U.S. 781 (1978)). With regard to Plaintiffs' Section 1981 and 1983 claims, Pennsylvania has not consented to suit, 42 Pa. Cons. Stat. Ann. § 8521(b), and Congress has not acted to override its immunity. Accordingly, this Court is without jurisdiction over Plaintiffs' Section 1981 and 1983 claims against Pennsylvania or its agencies, such as DCED. See Collins v. Sload, 212 F. App'x 136, 140 (3d Cir. 2007), citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).[3]

Additionally, with regard to Plaintiffs' claims against Defendants Davin and Collins, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and is no different from a suit against the State itself. Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985) and Kentucky v. Graham, 473 U.S. at 165–166). Given established case law, Plaintiffs have conceded to the dismissal of Section 1981 and 1983 claims against DCED, and official capacity claims against Davin and

---

[3] While the Commonwealth Defendants' motion to dismiss pursuant to the Eleventh Amendment addresses only official capacity claims, ECF No. 24 at 6-7, the Court acknowledges that had Plaintiffs otherwise stated a viable Section 1981 or 1983 claim against Davin or Collins in his or her individual capacity, or sufficiently alleged an official capacity claim for prospective injunctive relief, the Eleventh Amendment would not bar such claims. See, e.g., Hafer v. Melo, 502 U.S. 21, 30–3 (1991) (finding that a state official may be liable for prospective injunctive relief under Section 1983 for actions taken in his or her official capacity).

Further, had Plaintiffs stated a cognizable Title VI claim against DCED, Davin or Collins (in his or her official capacity), sovereign immunity for claims arising under Title VI has been specifically abrogated through 42 U.S.C. § 2000d-7. Sossamon v. Texas, 563 U.S. 277, 291 (2011).

Collins.  ECF No. 31 at 10.  Accordingly, the Commonwealth Defendants' Motion to Dismiss is granted as to Plaintiffs' Section 1981 and 1983 claims against DCED, as well as to Plaintiff's official capacity claims against Defendants Davin and Collins.[4]

### B.    Personal Involvement of Individual Commonwealth Defendants

The Commonwealth Defendants next seek dismissal of claims asserted against Defendants Davin and Collins in their individual capacities because Plaintiffs' Complaint fails to sufficiently plead facts establishing their personal involvement in the alleged discriminatory conduct, as required to assert a Section 1981 claim or Section 1983 claim.

As conceded by Plaintiffs, liability under either statute must be predicated upon an actor's personal involvement, with an affirmative link to causally connect the actor to the discriminatory action.  See, e.g., Johnson v. Resources for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994) (motion to dismiss granted as to Section 1981 claim where complaint failed to allege any affirmative link to causally connect individual defendants with complained of conduct); and see, Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(motion to dismiss as to Section 1983 civil rights claim properly granted where complaint failed to allege personal direction or actual knowledge and acquiescence in wrongful conduct).  When a defendant's connection is predicated upon allegations of knowledge and acquiescence as to another's wrongful conduct, supporting facts must be alleged with sufficient and appropriate particularity.  Thus, a civil rights complaint is adequate where it states time, place, and persons responsible.  Id., citing Boykins v. Ambridge Area School District, 621 F.2d 75, 80 (3d Cir.

---

[4] In light of the Court's dismissal of Plaintiff's Section 1983 official capacity claims and claims against DCED, the Court need not address the Commonwealth Defendants' alternative basis for relief predicated upon the definition of "person" set forth in 42 U.S.C. § 1983.  ECF No. 8.

1980). However, "[a]lleging a mere hypothesis that an individual had personal knowledge or involvement in depriving a plaintiff of his rights is insufficient." Spears v. Curcillo, 2015 WL 7016366 at *8 (M.D. Pa. Nov. 12, 2015) (citing Rode, 845 F.2d at 1208).

Plaintiffs allege that Davin "holds the position of Secretary of DCED," a state agency "which is led, directed and administered" by him. ECF No. 1 ¶¶ 12, 34. In this capacity, Plaintiffs allege that "upon information and belief," Davin was "and continue[s] to be unwilling to exercise appropriate oversight and provide needed supervision and direction to IW" to perform its legal obligations "or to direct IW not to discriminate on the basis of race and/or color." Id. ¶ 89. According to Plaintiffs, Davin's failure to direct IW not to discriminate constitutes ratification and acquiescence to IW's racial discrimination directed at Plaintiffs. Id. ¶ 91.

A policy-making supervisor's failure to employ a specific practice to correct a known unreasonable risk of constitutional harm may satisfy the personal involvement requirement, Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). However, there must be some factual basis to infer that the supervisor, here Davin or Collins, was aware that a BFTP partner discriminated in the dispersal of grant money on the basis of race. In this instance, Plaintiffs fail to allege any statistics, instances, or data showing that DECD, Davin, or Collins received complaints concerning BFTP partners' use of race in allocating funding. In the absence of facts giving rise to an inference that the Commonwealth Defendants were aware of an unreasonable risk of constitutional harm, Plaintiff's Sections 1981 and 1983 claims are entirely speculative and therefore fail to state a legally cognizable Section 1981 or 1983 claim. Accordingly, the Commonwealth Defendants' Motion to Dismiss Davin and Collins in his or her individual supervisory capacity is granted.

Plaintiffs argue that Defendant Collins' liability is predicated upon both her supervisory acquiescence to IW's alleged discriminatory conduct *and* her own independent discriminatory conduct. Accordingly, the sufficiency of the Complaint as to Defendant Collins must also be determined with regard to the elements of each cause of action alleged against her personally.

### C.  Title VI, Section 1981, and Equal Protection Clause Claims as to Commonwealth Defendants

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d. To state a plausible Title VI claim, the Complaint must allege facts that would show that Plaintiffs: (1) were members of a protected class; (2) qualified for the benefit or program at issue; (3) suffered an adverse action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Blunt v. Lower Merion School Dist., 767 F.3d 247, 274–75 (3d Cir. 2014). Private rights of action under Title VI itself are available only for acts constituting intentional discrimination. Alexander v. Sandoval, 532 U.S. 275, 281–82 (2001). Accordingly, plaintiffs suing under Title VI must allege intentional discrimination with facts demonstrating either discriminatory animus or deliberate indifference. Blunt, 767 F.3d at 272 (extending the deliberate indifference standard to claims under Title VI). Discriminatory animus requires that Plaintiffs establish prejudice, spite, or ill will. S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 263 (3d Cir. 2013). To state a claim for deliberate indifference, Plaintiffs must allege facts sufficient to show that Collins, in her official capacity, "acted with a discriminatory intent, or that [she] knew of – but failed to correct – [IW]'s' intentional discrimination." Blunt, 767 F.3d at 294 (citing SH, 729 F.3d at 264).

11

Plaintiffs also assert a claim for intentional discrimination pursuant to 42 U.S.C. § 1981.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "To state a claim under § 1981, a party must allege facts sufficient to show: '(1) [he] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts …" Gross v. R.T. Reynolds, Inc., 487 F. App'x 711, 716 (3d Cir. 2012)(quoting Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001)).

The United States Supreme Court has made clear that Section 1981 reaches only purposeful discrimination, but does "not include practices that while neutral on their face," have "the incidental effect of disadvantaging blacks to a greater degree than whites." General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 388-89, 391 (1982); see also Chauhan v. M. Alfieri Co. Inc., 897 F.2d 123, 126 (3d Cir. 1990).

With regard to Plaintiffs' equal protection claim pursuant to Section 1983, the Fourteenth Amendment dictates that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. "The central purpose of the Clause is to prevent the States from purposely discriminating between individuals on the basis of race." Johnson v. Fuentes, 704 F. App'x 61, 65 (3d Cir. 2017) (internal citations and quotation marks omitted). The elements of a valid Section 1983 claim for a denial of equal protection based on

intentional racial animus are that: (1) the plaintiff belongs to a protected class; (2) the defendant acted under color of state law; and (3) the defendant treated plaintiff differently because of his race. Id.; and see, Bradley v. United States, 299 F.3d 197, 205-6 (3d Cir. 2002) (internal citations omitted).

Plaintiffs' Complaint fails to allege facts sufficient to state a Title VI claim as to DCED or Collins in her official capacity, or a Section 1981 or Section 1983 claim as to Collins in her individual capacity. Plaintiffs allege Mr. Jones sought Collins' assistance to overcome IW's "recalcitrance" to grant IPT funding, and acknowledge that Collins provided a staff member to assist with IPT's application. The staff member is alleged to have been critical of IPT's application for funding. Plaintiffs do not allege any further facts, parsed from statements amounting to no more than legal conclusions, that either Mr. Jones or his minority-owned business were treated differently by Collins (or her agency) from other similarly situated individuals or entities who were not in a protected class, or that the treatment received was the result of racial animus. Plaintiffs also fail to allege any facts upon which it can be inferred that Collins had actual knowledge that IW denied funding on the basis of race, and therefore was deliberately indifferent to alleged discrimination as required by Title VI.

Further, no reasonable inference of intentional racial discrimination can be drawn from the fact that Mr. Jones is Black, that IPT is a minority-owned business, and that Collins assigned a staff member who was critical of IPT's request for funding. Plaintiffs do not connect the cited national business statistics to any action by DCED or any relevant funding partner, nor do Plaintiffs allege facts that would plausibly establish that Collins or DCED assisted non-minority owned businesses that were denied funding in any materially different manner. Instead, the Complaint broadly alleges that Plaintiffs have been subjected to more stringent criteria and

processes than Caucasians, but fails to allege any facts in support of that conclusory allegation, much less any facts that would "raise a reasonable expectation that discovery will reveal evidence" of such disparate treatment. Phillips, 515 F.3d at 234 (quotation omitted). See also, Gross, 487 F. App'x at 717 (3d Cir. 2012) (plaintiff's assertion that the defendant "'knowingly subjected him to disparate treatment ... because he is a minority' is nothing more than a legal conclusion couched as a factual allegation, which, under Rule 8, is insufficient to defeat a motion to dismiss.").

Because Plaintiffs' allegations, viewed in context and construed in Plaintiffs' favor, fail to give rise to a reasonable inference that DCED or Collins treated Plaintiffs differently because of Mr. Jones' race, the Commonwealth Defendants' Motion to Dismiss Plaintiffs' Title VI and Section 1981 claims is granted. Doe v. The Trustees of the University of Pennsylvania, 270 F. Supp.3d 799, 830 (E.D. Pa. 2017) (dismissing complaint that failed to allege facts in support of conclusory allegations that treatment received in disciplinary hearing was the result of racial animus, or disparately impacted racial minority).

Similarly, Plaintiffs' Section 1983 equal protection claim asserted against Collins in her individual capacity is dismissed because Plaintiffs again fail to allege facts that would establish either purposeful discrimination, or that would plausibly demonstrate that Plaintiffs "'receiv[ed] different treatment from that received by other individuals similarly situated.'" Blunt, 767 F.3d at 273 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)(superseded in part by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 10720)(internal citations omitted)). Instead it is apparent that Collins and DECD staff provided IPT relevant application information and personal assistance with IW.  While the application appears ultimately to have been unsuccessful, under the circumstances alleged in the Complaint, Plaintiffs fail to set forth

facts, again parsed from legal conclusions, to support an inference that Collins treated Plaintiffs differently from any other entities who had been denied funding, or that the differences in treatment were because of Mr. Jones' race. Phillips, 515 F.3d at 245; Burnett v. Springfield Twp., 2014 WL 3109963 at *8 (E.D. Pa. July 8, 2014) (motion to dismiss granted where well pleaded facts did not support a finding of disparate treatment or of discriminatory motive). Cf, Thomas v. University of Pittsburgh, 2014 WL 3055361 at *5 (W.D. Pa. July 3, 2014) (motion to dismiss equal protection claim of female athlete suspended after physical confrontation with coach was denied where plaintiff identified four instances where the University Athletic Department declined to suspend a male athlete after being criminally charged with assault or aggravated assault, as well as several other instances of lenient discipline of male athletes facing charges for harassment, disorderly conduct and drug possession).

Because Plaintiffs' Section 1983 claim is predicated upon speculative and conclusory allegations of discriminatory intent unsupported by facts, the Commonwealth Defendants' Motion to Dismiss Plaintiffs' equal protection claim against Collins is granted.[5]

**D.      Pendant Pennsylvania Constitutional Claims Against Commonwealth Defendants**

At Counts Four and Five of the Complaint, Plaintiffs seek recovery of damages against all Commonwealth Defendants under Articles 1§1 and 1§ 26 of the Pennsylvania Constitution for the violation of the right to equal protection and to be free of discrimination on the basis of race. ECF No. 1 at 17. The Commonwealth Defendants move to dismiss both claims because, as acknowledged by the United States Court of Appeals for the Third Circuit, "[t]he prevailing

---

[5] In light of the Court's disposition of all federal claims asserted against the Commonwealth Defendants, the Court need not resolve the applicability of qualified immunity, upon which relief alternatively is sought. ECF No. 24 at 15.

view is that Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 207 n.4 (3d Cir. 2008).

Plaintiffs cite <u>Bullock v. Horn</u>, 720 A.2d 1079, 1081-82 (Pa. Commw. Ct. 1998), an intermediate state court opinion in support of their claim, for the very general proposition that sovereign immunity "was not intended as a shield for Commonwealth officials against alleged violations of constitutional and/or statutory rights." <u>Id.</u> However, the same Court thereafter held that "neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." <u>Kornegey v. City of Philadelphia</u>, ___ F. Supp.3d ___, 2018 WL 1169655 at *7 (E.D. Pa. Mar. 6, 2018) (<u>quoting</u> <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)).

In the absence of controlling Pennsylvania Supreme Court authority addressing this issue, this Court declines to create a private right of action under the Pennsylvania Constitution where one has not already been recognized by an authoritative court. <u>See</u> <u>also</u>, <u>Ekwunife v. City of Philadelphia</u>, 245 F. Supp.3d 660, 678–79 (E.D. Pa. 2017).

Further, to the extent Plaintiffs seek injunctive relief that may otherwise be available as a remedy under the Pennsylvania Constitution, Plaintiffs allegations remain insufficient as to intentional or purposeful discrimination on the basis of race as to any Commonwealth Defendant, so as to support the grant of such relief. Accordingly, the Commonwealth Defendants' Motion to Dismiss Counts Four and Five of Plaintiffs' Complaint is granted.

### E.      Section 1983 Claim - IW

IW asserts several grounds for dismissal of Plaintiffs' equal protection claim. First, IW states that it is not a "state actor" and therefore not within the reach of Section 1983. Second, if

deemed a state actor, IW contends that Plaintiffs' allegations of liability must be predicated upon

an unconstitutional practice or policy to discriminate, which Plaintiff fails to support with any

factual allegations.  Finally, IW moves for dismissal of Plaintiff's Section 1983 claim based on

the absence of any allegations that it purposefully violated Plaintiffs' rights.

### 1.  State Actor/Arm of the State

A suit under Section 1983 requires the wrongdoers to have violated federal rights of the

plaintiff, and that they did so while acting under color of state law. 42 U.S.C. § 1983. "Careful

adherence to the 'state action' requirement preserves an area of individual freedom by limiting

the reach of federal law" and avoids the imposition of responsibility on a State for conduct it

could not control.  National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988)

(quoting Lugar v. Edmundson Oil Co., Inc., 457 U.S., 922, 936-937 (1982)). The "under color of

state law" requirement is part of the prima facie case for Section 1983, and the plaintiff bears the

burden of proof on this issue.  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)

(citing West v. Atkins, 487 U.S. 42, 48 (1988)).

In support of their claim, Plaintiffs allege that IW, a non-profit entity, qualifies as a "state

actor" because it receives state funding and operates in furtherance of an act of the General

Assembly to promote and support business innovation within the Commonwealth of

Pennsylvania.  ECF No. 1 ¶ 28.   However, neither a private entity's receipt of public funds nor

the fact that it "performs a function which serves the public" converts its acts to those of the

state.  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); Blum v. Yaretsky, 457 U.S. 991, 1011

(1982).[6] Rather, "'[t]he principal question at stake is whether there is such a close nexus between

---

[6] These factors also must also be weighed in light of the BFTP enabling legislation, which provides that "t]he Ben
Franklin Technology Partners shall be independent nonprofit institutions, working individually and in partnership
with each other, to advance the development of new technologies in this Commonwealth. The partners will be
overseen by regional boards of directors comprised of economic development, university or nonprofit research

the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)).

To answer that question, the United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" Kach v. Hose, 589 F.3d at 646 (alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific." Groman, 47 F.3d at 638; see also Crissman v. Dover Downs Entertainment Inc., 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts are crucial"). In the absence of the required factual record, resolution of IW's status on the instant Motion to Dismiss is not appropriate, and the Motion to Dismiss on this basis is denied.

Alternatively, IW contends that if it is a "state actor," then it is entitled to immunity pursuant to the Eleventh Amendment. See, e.g., Karns v. Shanahan, 879 F.3d 504, 519 (3d Cir. 2018) ("'[s]tates or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes are not "persons" under § 1983.'")(quoting Will v. Mich. Dep't of State Police, 491 U.S. at 70) and Howlett By & Through Howlett v. Rose, 496 U.S. 356, 365 (1990)("Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or

---

institutions and private industry representatives, with at least 50% representation from private industry." 73 Pa. Stat. Ann. § 400.55 (West).

state court.")). However, this inquiry is equally fact driven and thus inappropriate to consider based upon the current record. See, e.g., Bradley v. West Chester Univ. of Pennsylvania State Sys. of Higher Educ., 880 F.3d 643, 660 (3d Cir. 2018)(to determine if an agency is an "arm of the state," entitled to Eleventh Amendment immunity, the Court considers equally the following "Fitchik factors": (1) whether the money that would pay any judgment would come from the state; (2) the status of the agency under state law; and (3) the degree of autonomy possessed by the agency)(citing Fitchik v. N.J. Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989) (en banc) (consolidating the earlier, nine-factor test of Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969)).

Accordingly, IW's Motion to Dismiss on the basis of IW's status as either a state actor or an "arm of the state" is denied.

## 2. Sufficiency of Section 1983 Claim - IW

IW contends that even if deemed a "state actor," Plaintiffs' Section 1983 claim against it should be dismissed because Plaintiffs fail to allege facts sufficient to find that IW discriminated against IPT pursuant to an unconstitutional policy or custom.[7] ECF No. 27 at 7. To state an equal protection claim, Plaintiffs must allege "intentional discrimination," through a facially discriminatory custom or policy or through results that impact one group with a greater degree of severity than another. Hassan v. City of New York, 804 F. 3d 277, 294 (3d Cir. 2015).

_____

[7] IW correctly notes that liability under 42 U.S.C. § 1983 cannot be predicated upon respondeat superior or vicarious liability, but only for its own conduct, in the form of an unconstitutional policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). Plaintiff disputes the application of Monell to IW because it is not a municipality, and because it has alleged that "IW subjected Plaintiffs to a systematic pattern" intended to deprive IPT of funding and assistance. ECF No. 31 at 23. However, as indicated by controlling precedent, liability under Section 1983 is personal in nature and, as such, IW is liable for the acts of its employees only if those acts are deemed the result of IW's custom or policy or are actions of its final decision-making body (the Board of Directors). See, e.g., Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003); Ditzler v. Housing Authority of City of Nanticoke, 171 F. Supp.3d 363, 367-68 (M.D. Pa. 2016). Plaintiffs' claim is accordingly limited by the allegations of the Complaint to those actions which may be construed as IW custom or policy.

Here, in relevant part, Plaintiffs allege that, "[u]pon information and belief, … IW subjects minority owned businesses seeking grants and other assistance to a more stringent standard than non-minority owned businesses so that it is more difficult for minority owned businesses to obtain assistance." ECF No. 1 ¶ 86. In addition, Plaintiffs allege that "[u]pon information and belief, … the application for assistance given IPT by IW was different from and contained more onerous provisions than those given to non-minority applicants." ECF No. 1 ¶ 82. These allegations, like much of Plaintiffs' Complaint, are conclusory, not supported by any facts identifying particular application requirements, much less those that are "different" or "more stringent," or "more onerous" than those imposed upon non-minority owned businesses. While it is true that at this early stage of the litigation, Plaintiffs are not required to identify specific individuals or companies that have been treated differently, Phillips v. County of Allegheny, 515 F.3d at 245, at a minimum, Plaintiffs must identify and describe the alleged differences in the application process or required submissions so as to give rise to an inference that such requirements were motivated by racial animus. Here, Plaintiffs do not provide the application criteria applied to IPT, much less indicated how such criteria are different or are applied differently than those required by non-minority owned businesses. Under these circumstances, and in the absence of plausible allegations upon which the Court can draw the reasonable inference that Plaintiffs suffered disparate treatment as the result of race, Plaintiffs have not adequately set forth a Section 1983 equal protection claim. Accordingly, IW's Motion to Dismiss Plaintiffs' Section 1983 equal protection claim is granted.

**F.    Section 1981 Claim – IW**

IW moves to dismiss Plaintiffs' Section 1981 claim on the grounds that: (1) the parties had not agreed to enter into a contract, nor to the terms of any potential contract, and (2)

Plaintiffs failed to plead facts demonstrating that IW intentionally discriminated against IPT on the basis of race. As indicated *supra*, in order to state a claim under Section 1981, Plaintiffs must plead sufficient facts to establish that IW intended to discriminate on the basis of race and that such discrimination affected the Plaintiffs' right to make and enforce contracts. Brown v. Philip Morris Inc., 250 F.3d at 797. The statute defines "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Accordingly, Section 1981 offers relief when racial discrimination is alleged to have prevented the creation of contractual relationship, as well as when racial discrimination impairs an existing contractual relationship. Sayed-Aly v. Tommy Gun, Inc., 170 F. Supp.3d 771, 776 (E.D. Pa. 2016); and see, Gross, 487 F. App'x at 718-19.

In the instant case, Plaintiffs have alleged that racial discrimination blocked him from creating a contractual relationship with IW. However, Plaintiffs have not alleged facts sufficient to support a reasonable inference that this occurred for reasons related to race. In this respect, Plaintiffs' Complaint mirrors the claims at issue in Gross, supra, where the United States Court of Appeals for the Third Circuit affirmed the dismissal of an amended complaint alleging, *inter alia*, lending discrimination based on race. In reviewing the plaintiff's allegations, the Court observed that the amended complaint did not allege that plaintiff was qualified for the loan or that the requirements placed upon him were unreasonable or overly burdensome. "Moreover, Gross's naked assertion that Graystone did not require other similarly situated non-minority customers to secure their loans with a home mortgage does not suffice to satisfy Rule 8's pleading standard." Id. at 719 (quoting Iqbal, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'")).

The quality of allegations is particularly relevant in this case, because Section 1981 does not proscribe "practices that [are] neutral on their face, and even neutral in terms of intent," General Bldg. Contractors Ass'n, 458 U.S. at 390.  Here, Plaintiffs' conclusory assertions of discriminatory application requirements and procedures are unsupported by any "meaningful comments, actions, or examples of similarly-situated persons outside of Plaintiff's protected class being treated differently" and are insufficient to withstand the pending Motion to Dismiss. Douglas v. Nesbit, 2017 WL 2506399 *4 (M.D. Pa. June 9, 2017).   Under these circumstances, Plaintiffs have failed to state a plausible claim for discrimination under Section 1981, and the Court grants IW's Motion to Dismiss Plaintiffs' Second Cause of Action premised upon 42 U.S.C. § 1981.

### G.      Title VI – IW

IW has moved for dismissal of Plaintiffs' Title VI claim against it for failure to allege facts sufficient to state a claim for intentional discrimination based on race with regard to an opportunity to participate in or receive benefits from a program that receives federal funding.  In particular, IW contends that Plaintiffs have not alleged facts to give rise to an inference of discrimination, or facts establishing that it is a federally funded entity within the scope of Title VI. IW further seeks dismissal of IPT's Title VI claim, as IPT does not qualify as a "person" within the scope of Title VI protection.

At this early stage of the litigation, Plaintiffs have sufficiently alleged that certain of the funds received by IW for distribution are provided by the federal government within the meaning of Title VI.  See, ECF No. 1 ¶¶ 35-36.  The Court further finds unpersuasive IW's contention that IPT, a minority-owned enterprise, lacks standing to file a Title VI claim. See, e.g.,  Carnell Const. Corp. v. Danville Redevelopment & Housing Authority, 745 F.3d 703, 714 (4th Cir.

2014) (a minority-owned corporation may establish an "imputed racial identity" for purposes of demonstrating standing to bring a claim of race discrimination under federal law); Hudson Valley Freedom Theater, Inc. v. Heimbach, 671 F.2d 702, 706 (2d Cir. 1982) (same); and see, Security & Data Technologies, Inc. v. Sch. Dist. of Philadelphia, 145 F. Supp.3d 454, 464 (E.D. Pa. 2015) (with regard to Section 1981, a corporation may acquire a racial identity and, therefore, standing in certain circumstances).

However, the Court is persuaded that Plaintiffs have failed to allege facts sufficient to plausibly state a Title VI claim, which requires allegations of adverse action "under circumstances giving rise to an inference of discrimination." Blunt, 767 F.3d at 275 (citing Lower Merion School Dist., 826 F.Supp.2d at 758). Plaintiffs repeatedly allege that IW's denials of IPT's applications for funding and assistance were motivated by racial animus, but fail to set forth any facts that evidence an intent to harm IPT or Mr. Jones *because of race*.

In this respect, Plaintiffs' Complaint mirrors that of the plaintiff in Saravanan v. Drexel University, 2017 WL 5659821 at *8-9 (E.D. Pa. Nov. 24, 2017), where the Court dismissed a Title VI claim because the plaintiff's repeated and conclusory allegations of discrimination on the basis of race were not supported by facts "showing how Drexel's conduct against him gave rise to an inference of discrimination." Like Plaintiffs here, Saravanan cited national statistics, in his case showing that harsher discipline was applied to minorities in an academic setting, but the cited statistics were not correlated to Drexel or any of its representatives. In addition, while Saravanan alleged that Drexel employees used race-bigoted statements, he failed to plead the content of the statements. Because Saravanan failed to plead specifics that would evidence intent to harm because of his race, the Court determined that plaintiff failed to plead a claim under Title VI.

The only facts alleged in the Complaint at issue to support an inference of discrimination are that Mr. Jones is a "Black resident of Allegheny County" who was denied funding and assistance. These allegations are wholly insufficient to establish that funding was denied for racially motivated reasons. While Plaintiffs speculate of more onerous application requirements for minorities, none are listed or described, and it thus falls to speculation to determine whether such requirements are equally applied to all applicants who have been previously denied funding for valid business reasons, or solely to Plaintiffs, because of Mr. Jones' race. Accordingly, because the Complaint fails to allege facts sufficient to demonstrate discriminatory animus or indifference by IW, the Motion to Dismiss Plaintiffs' Title VI claim is granted.

## IV. CONCLUSION

For the foregoing reasons, the Commonwealth Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 23, filed on behalf of Defendants Department of Community and Economic Development, Dennis M. Davin, and Sherri Collins, and the Motion to Dismiss filed on behalf of Innovation Works, Inc., ECF No. 26, are properly granted. Pursuant to Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008), Plaintiffs are granted leave to file an amended complaint within twenty days. The following Order is entered:

### ORDER

AND NOW, this 6th day of April, 2018, upon consideration of the Commonwealth Defendants' Motion to Dismiss Plaintiffs' Complaint, ECF No. 23, filed on behalf of Defendants Department of Community and Economic Development, Dennis M. Davin, and Sherri Collins, and the Motion to Dismiss filed on behalf of Innovation Works, Inc., ECF No. 26, and the briefs filed in support and in opposition thereto, ECF Nos. 24, 27, 31, and 32, and for the reasons set forth herein,

IT IS HEREBY ORDERED that the Motions to Dismiss Plaintiffs' Complaint are GRANTED and Plaintiffs' Complaint is dismissed without prejudice. Plaintiffs are granted leave to file an Amended Complaint remedying the claims that have been dismissed no later than twenty days from the date of this order. If Plaintiffs choose not to file an amended complaint, the Clerk shall be directed to terminate this matter as to all claims and all parties.

BY THE COURT:

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE